1  Naomi Spector (SBN 222573)
2  Email: nspector@kamberlaw.com
   **KAMBERLAW, LLP**
3  3451 Via Montebello, Ste.192-212
4  Carlsbad, CA 92009
   Phone: 310.400.1053
5  Fax: 212.202.6364

6  Counsel for Plaintiff Allison Barton,
7  and the Putative Class

8

9            **IN THE UNITED STATES DISTRICT COURT**
10           **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

11                                    CASE NO. '25CV1849 BAS KSC

12

13   **ALLISON BARTON, individually,**          **CLASS ACTION COMPLAINT FOR:**
14   **and on behalf of others similarly**
     **situated,**                              **1.  UNFAIR AND UNLAWFUL**
15                                               **BUSINESS ACTS AND PRACTICES**
                    **Plaintiff,**              **(CAL. BUS & PROF. CODE §17200 ET**
16                                               **SEQ.);**
        **vs.**                                 **2.  DECEPTIVE ADVERTISING**
17                                               **PRACTICES (CAL. BUS & PROF.**
                                                 **CODE §§ 17500, ET SEQ.);**
18   **ONLY WHAT YOU NEED, INC.,**              **3.  CONSUMER LEGAL REMEDIES**
19                                               **ACT (CAL. CIV. CODE § 1750, ET**
                    **Defendant.**              **SEQ.);**
20                                               **4.  BREACH OF EXPRESS**
21                                               **WARRANTY; AND**
22                                               **5.  UNJUST ENRICHMENT**

23                                               **"DEMAND FOR JURY TRIAL"**
24

25

26        Plaintiff Allison Barton on behalf of herself and others similarly situated in
27   California, by and through her undersigned counsel, hereby files this Class Action
28   Complaint and states as follows based on investigation and information and belief:

---

                              **CLASS ACTION COMPLAINT**

## I.    INTRODUCTION

1.    It is a longstanding principle of California consumer protection law that product labeling should be truthful and not misleading in order to facilitate informed purchasing decisions.

2.    Defendant Only What You Need, Inc. d/b/a OWYN ("Defendant") violates California consumer protection law in the labeling of its Chocolate flavor Plant Protein Powder (the "Products") by representing that the Products are an "ELITE" protein powder containing "ONLY WHAT YOU NEED" and "NOTHING YOU DON'T" but failing to disclose that the Products contain lead.

3.    On the front label of the Product, Defendant prominently states that the Products:

- are "PRO ELITE";
- contain "ONLY WHAT YOU NEED";
- "SUPPORTS digestive health"
- "SUPPORTS immune health"; and
- are a "high quality protein" (collectively, the "Front Label Representations").

4.    On the side label of the Products, Defendant reiterates that the Products contain "<u>ONLY</u> WHAT YOU NEED" and lists "100% Plant Protein Nutrition", "Superfoods Greens Blend", ":Essential Amino Acids", "10 Vitamins & Minerals", "2 Billion CFU Probiotics" and "Peas from North America".

5.    Also on the side label of the Products, under the statement "<u>ONLY</u> WHAT YOU NEED", Defendant states "<u>NOTHING</u> YOU DON'T" and crosses out the following: "Dairy, Wheat/Gluten, Soy, Eggs, Peanuts, Nuts, Sesame, Fish, Shellfish, **Chemicals**, Fillers, Artificial Colors, Artificial Flavors, or Artificial Sweeteners" (the "Side Label Representations" and collectively with the Front Label Representations, the "Representations") (emphasis added).

**CLASS ACTION COMPLAINT**

6.     The label Representations are likely to lead reasonable consumers to believe that the Products are an "elite" protein powder that is free from heavy metals, including lead.

7.     The label Representations are misleading based on the lead contained in the Products, which is not disclosed anywhere on the labels.

8.     According to independent scientific testing commissioned by Plaintiff's counsel, Defendant's Products contain .5976 mcg of lead per serving, which exceeds the California Proposition 65 Maximum Allowable Dose Level ("MADL") for reproductive toxicity of 0.5 micrograms of lead per day.[1]

9.     Separate and apart from Proposition 65, as acknowledged by the World Health Organization, "[t]here is no level of exposure to lead that is known to be without harmful effects."[2]

10.     Consumers, including Plaintiff, pay a price premium to purchase Defendant's Product because they believe the Products offer an "elite" source of protein.

11.     Consumers, including Plaintiff, do not want to purchase and/or do not want to pay a premium to purchase Defendant's Products if they contain lead, particularly at the amounts set forth herein.

12.     There are other plant-based protein powders available to consumers that do not contain lead.

_____

[1] This action is not brought pursuant to Proposition 65 but is brought pursuant to California's consumer protection laws based on consumer deception due to the mislabeling of the Products. Proposition 65, however, establishes the specific levels of exposure set forth by the California legislature at which "businesses [are required] to provide warnings to Californians about significant exposures to chemicals that cause cancer, birth defects or other reproductive harm." https://oehha.ca.gov/proposition-65/about-proposition-65#:~:text=What%20is%20Proposition%2065?,into%20sources%20of%20drinking%20water.

[2] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health

**CLASS ACTION COMPLAINT**

13.    Importantly, still other plant-based protein powders contain a warning label disclosing that the Products can expose consumers to chemicals, including lead.

14.    By making the Representations and failing to disclose that the Products contain lead, Defendant deprives consumers of the opportunity to make an informed purchasing decision.

15.    Defendant makes the label Representations in order to drive its own profits and to the detriment of Plaintiff and Class members who would not have purchased the Products, or would not have purchased them on the same terms, if they knew the truth.

## II.    JURISDICTION AND VENUE

16.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

17.    This Court has personal jurisdiction over Defendant because Defendant's contacts with the forum are continuous and substantial, and Defendant intentionally availed itself of the markets within California through the sale and distribution of the Products in California and through the privilege of conducting business in California.

18.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of California. Moreover, a substantial part of the events and conduct giving rise to the claims alleged herein occurred in this district. *See also* Declaration of Allison Barton Regarding Venue Pursuant to Cal. Civ. Code § 1780(d), attached as Exh. A.

## III.    FACTUAL ALLEGATIONS

### A.    The Lead in the Products is Material to Consumers

19.    According to a report conducted by Allied Market Research, "health-conscious consumers are mainly responsible for driving demand for all plant-based

protein, including meat substitutes and protein powder."[3]

20.    "The growth of plant-based protein powder follows a more general increase in demand for plant-based food. In 2021 plant-based food dollar sales in the US grew by 6%, three times faster than overall food sales. Ethical, environmental and health reasons drive this shift."[4]

21.    Consumers of Defendant's Products, like Plaintiff, believe they are purchasing a premium, healthy protein supplement.

22.    Consumers of Defendant's Products, like Plaintiff, do not want to purchase a plant-based protein powder containing lead and/or do not want to pay a price premium for a protein powder containing lead.

23.    Lead affects almost every organ and system in the body and accumulates in the body over time, leading to severe health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death.[5]

24.    According to the World Health Organization, "[t]here is no level of exposure to lead that is known to be without harmful effects."[6]

25.    Lead poisoning "occurs mainly by ingestion of food or water contaminated with lead."[7]

26.    "Lead is thought to be quickly absorbed in the blood stream and is believed to have adverse effects on certain organ systems like the central nervous system, the cardiovascular system, kidneys, and the **immune system** (Bergeson, 2008)."[8] (emphasis

---

[3] https://plantbasedworldpulse.com/health-conscious-consumers-and-significant-innovation-fuels-vegan-protein-powder-sales/

[4] *Id.*

[5] Wani AL, et al., Lead toxicity: a review, INTERDISCIP TOXICOL. (June 2015), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4961898.

[6] https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health

[7] *Id.*

[8] *Id.*

**CLASS ACTION COMPLAINT**

added).

**B.** **Scientific Testing Demonstrates that Defendant's Products Contain a Substantial Amount of Lead**

27.     Plaintiff's counsel commissioned scientific testing of Defendant's Products by an independent laboratory, which holds numerous accreditations, including ISO/IEC 17025:2017 and the FDA Laboratory Accreditation for Analysis of Foods (LAAF).

28.     In January of 2025, the laboratory conducted testing of Defendant's Products.

29.     The testing was conducted using Inductively Coupled Plasma – Mass Spectrometry ("ICP-MS").

30.     ICP-MS is used to test for the presence of heavy metals, and quantify the amount.

31.     ICP-MS is recognized for its high precision and sensitivity in measuring heavy metals, including lead.

32.     ICP-MS is the approved methodology used by the FDA to test for the presence of heavy metals in food.[9]

33.     The results of the scientific testing demonstrate that the Products contain .5976 mg of lead per serving.

34.     The amount of lead in a single serving of the Products exposes consumers to lead in excess of the MADL.

35.     The ingredients in the Products are and were the same during the Class Period.

---

[9] *See e.g.* https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares#:~:text=In%20addition%2C%20the%20FDA%20has,parts%20per%20billion%20(ppb) (linking to an Elemental Analysis Manual for Inductively Coupled Plasma-Mass Spectrometric Determination).

## C. **Reasonable Consumers Are Likely to Be Misled by Defendant's Label Representations**

36.   The following are examples of the label images of the Products:






37.  As depicted above, the Products contain the following prominent, uniform Representations:

38.  The Front Label Representations:

- "PRO ELITE";
- "ONLY WHAT YOU NEED";
- "BENEFITS": "SUPPORTS digestive health"; "SUPPORTS immune health"; and "high quality protein";

39.  The Side Label Representations:

- "ONLY WHAT YOU NEED": "100% Plant Protein Nutrition", "Superfoods Greens Blend", Essential Amino Acids", "10 Vitamins & Minerals", "2 Billion CFU Probiotics", and "Peas from North America".
- "NOTHING YOU DON'T" and crosses out the following: "Dairy, Wheat/Gluten, Soy, Eggs, Peanuts, Nuts, Sesame, Fish, Shellfish, Chemicals, Fillers, Artificial Colors, Artificial Flavors, or Artificial Sweeteners" (the "Side Label Representations" and collectively with the Front Label Representations, the "Representations").

40.  The label Representations are likely to lead reasonable consumers to believe that the Products are an "elite" protein powder that is free from heavy metals, including lead.

41.  The Representations are misleading based on the lead contained in the Products, which Defendant fails to disclose.

42.  The Representations are voluntary advertising statements.

43.  The Representations are not governed or required by any government or FDA regulation or requirement.

44.  Defendant voluntarily makes the Representations on the labels of the Products to appeal to consumers and to increase sales of the Products.

45.  Defendant intentionally makes the label Representations but fails to disclose the lead in the Products.

46.     The disclosure of lead in the Products would negatively impact Defendant's sales of the Products and its bottom line.

47.     If consumers knew that the Products contain lead, particularly in the amounts set forth herein, they would not purchase the Products or would purchase them on different terms.

48.     There are other plant-based protein powders besides Defendant's Products available on the market.

49.     Consumers, however, are deprived of making the informed choice between the Products, which contain lead, and other protein powders, which do not.

50.     Plaintiff and reasonable consumers suffered economic injury based on the purchase price of the Products.

51.     If Plaintiff had known the truth about Defendant's Products, she would not have purchased the Products or would have purchased them on different terms.

52.     Plaintiff and Class members were harmed based on money spent to purchase the Products, which they would not have purchased—or would have paid less for—if they had known that the Products contain lead.

## IV.     PARTIES

53.     Plaintiff Allison Barton is a citizen of California who purchased the Products in this judicial district during the class period. Plaintiff's claim is typical of all Class members in this regard.

54.     The advertising and labeling on the package of the Products purchased by Plaintiff, including the Representations, is typical of the advertising, labeling and representation of the Products purchased by members of the Class.

55.     The price paid by Plaintiff for the Products is typical of the price paid by members of the Class.

56.     Plaintiff relied on Defendant's Representations, as described below.

57.     Defendant Only What You Need, Inc. is a Delaware corporation with its principal place of business in New York, New York.

**CLASS ACTION COMPLAINT**

58.    Defendant and its agents manufacture, market, distribute, label, promote, advertise and sell the Products.

59.    At all times material hereto, Defendant was conducting business in the United States, including in California, through its services as a manufacturer and supplier to various stores in California and by, among other things, maintaining agents for the customary transaction of business in California.

60.    Defendant and its agents promoted, marketed and sold the Products at issue in this jurisdiction and in this judicial district.

61.    The deceptive acts giving rise to Plaintiff's claims occurred in this jurisdiction and in this judicial district.

62.    The unfair, unlawful, deceptive, and misleading advertising and labeling of the Products was prepared and/or approved by Defendant and/or its agents, and was disseminated by Defendant and its agents through labeling and advertising containing the misrepresentations alleged herein.

**A. <u>Plaintiff Was Misled and Injured by Defendant's Misconduct</u>**

63.    Plaintiff purchased the Product, Net Weight 1.32 LBS, between February and April of 2024.

64.    Plaintiff purchased the Products from a Sprouts Farmers Market store located in this judicial district.

65.    To the best of her recollection, Plaintiff paid approximately $35.00 for the Product.

66.    Plaintiff purchased the Product for personal use.

67.    At the time of purchase, Plaintiff viewed the label images on the Product, including the Representations.

68.    At the time of purchase, Plaintiff did not know, and had no reason to know, that the Products contain lead.

69.    Acting reasonably under the circumstances, Plaintiff relied on the Representations and believed that she was purchasing an "ELITE" protein powder that

contained "ONLY WHAT [she] NEED[S]", and "NOTHING [she] DO[ESN'T]", including the reasonable belief that the Products do not contain lead.

70. Unbeknownst to Plaintiff at the time of purchase, the Products contain lead.

71. Defendant failed to disclose that the Products contain lead.

72. Had Plaintiff known at the time of purchase that the Products contain lead, Plaintiff would not have purchased the Products or would have purchased them on different terms.

73. Defendant continues to sell the misbranded Products.

74. Plaintiff would like to purchase the Products in the future if the Products did not contain lead.

75. Plaintiff continues to suffer harm because she is not able to rely on the labeling and advertising of the Products for their truth, and thus is unable to determine whether she can purchase the Products in the future.

76. Unless Defendant is enjoined from failing to misrepresent the Products in the future, Plaintiff and consumers will not be able to reasonably determine whether the mislabeling of the Products has been addressed and remedied.

77. Accordingly, Plaintiff's legal remedies are inadequate to prevent future injuries.

## V. CLASS DEFINITION AND CLASS ALLEGATIONS

78. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself, on behalf of all others similarly situated, and as a member of the Class defined as follows:

> All citizens of California who, within four years prior to the filing of the initial Complaint, purchased Defendant's Products in the State of California and who do not claim any personal injury from using the Products (the "Class").

79. Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has a controlling interest; (iii) federal, state, and/or local governments, including, but not limited to, their

departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and their staff, and persons within the third degree of consanguinity to such judicial officer.

80.     Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

81.     This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

82.     **Numerosity**:  Members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the Class consists of hundreds of thousands of purchasers throughout the State of California.  Accordingly, it would be impracticable to join all members of the Class before the Court.

83.     **Common Questions Predominate:**  There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

- Whether Defendant's Representations are likely to mislead reasonable consumers;
- Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising, labeling and selling the Products;
- Whether Defendant violated (i) California Bus. & Prof. Code § 17200, *et seq*.; (ii) Cal. Bus. & Prof. Code § 17500, *et seq*.; and/or (iii) the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.;
- Whether Defendant committed a breach of express warranty;
- Whether Plaintiff and the Class have sustained damage as a result of Defendant's unlawful conduct;

**CLASS ACTION COMPLAINT**

- Whether Defendant was unjustly enriched; and

- The proper measure of damages sustained by Plaintiff and the Class.

84. **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent because Plaintiff, like the Class members, purchased Defendant's Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class member's claims arise from the same practices and course of conduct and are based on the same legal theories.

85. **Adequacy:** Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

86. **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

   a. The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

   b. Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

   c. Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for

**CLASS ACTION COMPLAINT**

the wrongs Defendant committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

d.    When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Class can seek redress for the harm caused to them by Defendant.

87.    Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

88.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

89.    Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Unfair and Unlawful Business Acts and Practices**
**(Business and Professions Code § 17200, *et seq.*)**
**(*for Plaintiff and the Class*)**

90.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

**CLASS ACTION COMPLAINT**

91.    Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq*. (the "UCL"). The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

92.    Plaintiff brings this claim seeking restitution or disgorgement of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices, as described herein; and injunctive relief to stop Defendant's misconduct, as described herein.

93.    Defendant's knowing conduct, as alleged herein, constitutes a "fraudulent" and/or "unfair" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

### *Defendant's Conduct Constitutes a Fraudulent Business Practice*

94.    Defendant's conduct constitutes a fraudulent business practice because consumers are likely to be deceived by Defendant's Representations.

95.    Defendant was and is aware that its Representations are material to consumers.

96.    Defendant was and is aware that its Representations are misleading, as described herein.

97.    Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the labeling and advertising of the Products.

98.    There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

### *Defendant's Conduct Constitutes an Unfair Business Practice*

99.    Defendant's conduct violates both the "Immoral Test" and the "Balancing Test" under California law, which are used to analyze whether conduct is "unfair".

**CLASS ACTION COMPLAINT**

100. Defendant's conduct violates the Immoral Test because Defendant intentionally makes the Representations to increase sales of the Products.

101. Defendant was and is aware that its Representations are misleading.

102. Defendant's conduct is substantially injurious because consumers purchase the misrepresented Products in reliance on Defendant's Representations.

103. Defendant's conduct is also substantially injurious because, by making the misleading Representations, Defendant prevents consumers from making accurate value comparisons between Defendant's Products and competitor products.

104. Defendant's conduct also violates the "Balancing Test" because the utility of Defendant's conduct in labeling the Products with the Representations is outweighed by the harm to consumers.

105. As set forth herein, the Representations are optional, voluntary advertising statements.

106. Defendant makes the Representations to increase sales of the Products and to the detriment of consumers, who are misled and deceived.

107. Consumers are directly harmed by Defendant's conduct in that they would not have purchased the Products, or would have paid less for the Products, if they had known the truth.

108. Defendant's conduct is also substantially injurious because it prevents consumers from making informed purchasing decisions.

109. In addition, Defendant's conduct is injurious to competition because Defendant's misrepresentation of its Products prevents consumers from making an informed choice between its Products and other similar products, which are not misrepresented.

110. Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the labeling and advertising of the Products.

**CLASS ACTION COMPLAINT**

111.    There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

112.    Plaintiff and members of the Class could not have reasonably avoided injury. Defendant's uniform Representations regarding the Products were likely to deceive, and Defendant knew or should have known that its Representations were misleading.

113.    Plaintiff purchased the Products with the reasonable belief that the Representations were true, and without knowledge that the Products in fact contain lead.

### Defendant's Conduct Constitutes an Unlawful Business Act

114.    Defendant's misrepresentation of material facts, as set forth herein, also constitute an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770 and the laws and regulations cited herein, as well as the common law.[10]

115.    Defendant's conduct in making the Representations, in the absence of any lead disclosure, constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, all of which are binding upon and burdensome to its competitors.

116.    This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

---

[10] The California Civil Code Sections prohibit the following conduct: (i) § 1572: actual fraud, including by suggestion of an untrue fact or suppression of that which is true; (ii) § 1573: constructive fraud, including by breach of duty "by misleading another to his prejudice" and in any act or omission that the law declares to be fraudulent; (iii) §§ 1709-1711: willfully deceiving another or a particular class of persons "with intent to induce him to alter his position to his injury or risk", including by suggestion of a fact that is not true or suppression of a fact by one who is bound to disclose it, or by giving information "of other facts which are likely to mislead for want of communication of that fact"; (iv) § 1770: listing proscribed practices, including unfair methods of competition and unfair or deceptive acts and practices, as described herein.

**CLASS ACTION COMPLAINT**

117.    Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Class members.

118.    As a result of the business acts and practices described above, Plaintiff and members of the Class are entitled to such Orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

119.    Pursuant to Civil Code § 3287(a), Plaintiff and the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class are entitled to interest in an amount according to proof.

**No Adequate Remedy at Law**

120.    Plaintiff's legal remedy is inadequate.

121.    Disgorgement serves to make illegal conduct unprofitable. Thus, disgorgement uniquely serves as a deterrent for future, unlawful conduct by Defendant.

122.    In addition, Plaintiff's request for equitable relief goes beyond Plaintiff's request for legal damages.

123.    Disgorgement is based on Defendant's gain, rather than Plaintiff's loss.

124.    Accordingly, as a measure of Defendant's unjust enrichment or ill-gotten gains, disgorgement permits recovery of interest.

125.    In addition, disgorgement can be readily measured as a sum certain according to Defendant's financial records while legal damages are generally subject to complex and costly expert valuation.

126.    In addition, the reach of equitable relief may extend beyond that of legal damages. While legal damages under the CLRA are limited by statute (*e.g.*, to persons

**CLASS ACTION COMPLAINT**

who purchase for personal, family or household purposes) equitable relief under the UCL is not statutorily limited.

127.    As a result of the business acts and practices described above, pursuant to § 17203, Plaintiff and members of the Class are entitled to an order enjoining such future wrongful conduct on the part of Defendant.

128.    As set forth herein, Plaintiff's remedy at law is inadequate to allow Plaintiff to determine whether the labeling and advertising of the Products has been remediated and thus whether she can purchase the Products in the future.

## SECOND CAUSE OF ACTION
### Deceptive Advertising Practices
**(California Business & Professions Code §§ 17500, *et seq.*)**
**(*for Plaintiff and the Class*)**

129.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

130.    California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . .." (the "FAL").

131.    Defendant violated § 17500 by making the Representations; and by representing that the Products possess characteristics and value that they do not have.

132.    Defendant's deceptive practices were designed to induce reasonable consumers like Plaintiff to purchase the Products.

133.    Defendant's uniform Representations were likely to deceive, and Defendant knew or should have known that they were misleading.

134.    Plaintiff purchased the Products in reliance on the Product labeling, including that the Product labeling was accurate as alleged herein, and without knowledge of Defendant's misrepresentations.

135.    Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the price paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such

as Plaintiff and Class members.

136.   The above acts of Defendant were and are likely to deceive reasonable consumers in violation of § 17500.

137.   In making the Representations alleged herein, Defendant knew or should have known that the Representations were deceptive and/or misleading, and acted in violation of § 17500.

138.   As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500 Plaintiff and members of the Class request an Order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, as well as interests and attorneys' fees.

### No Adequate Remedy at Law

139.   Plaintiff's legal remedy is inadequate.

140.   Disgorgement serves to make illegal conduct unprofitable. Thus, disgorgement uniquely serves as a deterrent for future, unlawful conduct by Defendant.

141.   In addition, Plaintiff's request for equitable relief goes beyond Plaintiff's request for legal damages.

142.   Disgorgement is based on Defendant's gain, rather than Plaintiff's loss.

143.   Accordingly, as a measure of Defendant's unjust enrichment or ill-gotten gains, disgorgement permits recovery of interest.

144.   In addition, disgorgement can be readily measured as a sum certain according to Defendant's financial records while legal damages are generally subject to complex and costly expert valuation.

145.   In addition, the reach of equitable relief may extend beyond that of legal damages. While legal damages under the CLRA are limited by statute (*e.g.*, to persons who purchase for personal, family or household purposes) equitable relief under the FAL is not statutorily limited.

**CLASS ACTION COMPLAINT**

146.    As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500, Plaintiff and members of the Class request an Order pursuant to § 17535 enjoining such future wrongful conduct on the part of Defendant.

147.    As set forth herein, Plaintiff's remedy at law is inadequate to allow Plaintiff to determine whether the labeling and advertising of the Products has been remediated and thus whether she can purchase the Products in the future.

**THIRD CAUSE OF ACTION**
**Consumer Legal Remedies Act**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(*for Plaintiff and the Class*)**

148.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

149.    Plaintiff brings this action pursuant to California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. ("CLRA").

150.    The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

151.    The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

152.    Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

153.    Plaintiff and members of the Class are "consumers," as defined by the CLRA in California Civil Code §1761(d).

154.    Purchase of the Products by Plaintiff and members of the Class are "transactions," as defined by the CLRA in California Civil Code §1761(e).

155.    Defendant violated Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" by making the Representations, as described herein.

**CLASS ACTION COMPLAINT**

156.    Defendant also violated section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . if they are of another" by making the Representations.

157.    In addition, Defendant violated section 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are misrepresented and misbranded.

158.    Defendant's uniform Representations regarding the Products were likely to deceive, and Defendant knew or should have known that its Representations were deceptive and/or misleading.

159.    Plaintiff and members of the Class relied on Defendant's unlawful conduct and could not have reasonably avoided injury.

160.    Plaintiff and members of the Class were unaware of the existence of facts that Defendant suppressed and failed to disclose, including that the Products contain lead.

161.    Plaintiff and members of the Class would not have purchased the Products, or would have purchased them on different terms, had they known the truth about the lead in the Products.

162.    Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct.

163.    Such injury includes, but is not limited to, the purchase price of the Products and/or the improper premium price of the Products at which they were offered.

164.    Moreover, Defendant's conduct is malicious, fraudulent, and/or wanton in that Defendant intentionally misled and withheld material information from consumers, including to increase the sale of the Products.

165.    Pursuant to California Civil Code § 1782(a), on February 20, 2025, Plaintiff on her own behalf, and on behalf of members of the Class, provided notice to Defendant of the alleged violations of the Consumer Legal Remedies Act by notice letter setting forth Plaintiff's claims.

**CLASS ACTION COMPLAINT**

166.    Despite giving Defendant more than 30-days from the date of the
notification letter and original Class Action Complaint to provide appropriate relief for
violations of the CLRA, Defendant has failed to provide any such relief. As such,
Plaintiff seeks compensatory, monetary and punitive damages, and requests that this
Court enter such Orders or judgments as may be necessary to restore to any person in
interest any money which may have been acquired by means of such unfair business
practices, and for such other relief as is provided in California Civil Code § 1780 and in
the Prayer for Relief.

167.    As a direct and proximate result of Defendant's unlawful conduct in
violation of the CLRA, Plaintiff and members of the Class request an Order pursuant to
§ 1780 enjoining such future wrongful conduct on the part of Defendant.

**FOURTH CAUSE OF ACTION**
**Breach of Express Warranty**
**(*for Plaintiff and the Class*)**

168.    Plaintiff re-alleges and incorporates by reference the allegations contained
in the preceding paragraphs of this Complaint, as though fully set forth herein.

169.    By advertising and selling the Products at issue, Defendant made promises
and affirmations of fact on the Products' packaging and labeling, as described herein.

170.    This labeling and advertising constitute express warranties and became part
of the basis of the bargain between Plaintiff and members of the Class, and Defendant.

171.    Defendant, through its advertising and labeling, created express warranties
that the Products:

- are "PRO ELITE";
- have "ONLY WHAT YOU NEED" and NOTHING YOU DON'T";
- do not have "Chemicals"; and
- " SUPPORTS immune health".

172.    The express warranties appear on all labels of the Products and specifically
relate to the goods being sold.

**CLASS ACTION COMPLAINT**

173.    Despite Defendant's express warranties about the nature of the Products, the Products do not comport with the Representations.  Thus, the Products were and are not what Defendant represented them to be.

174.    The Products are not "PRO ELITE" because a pro elite protein powder should not contain heavy metal contamination.

175.    The Products do not in fact provide "ONLY WHAT YOU NEED" and "NOTHING YOU DON'T" because the products contain lead.

176.    The Products are not free of "Chemicals" because they contain lead.

177.    The Products do not "support[] immune health" due to the lead contained in the Products, which is determinantal to immune health.

178.    Accordingly, Defendant breached the express warranties about the Products and their qualities because the Products do not conform to Defendant's affirmations and promises.

179.    Plaintiff's counsel provided Defendant with pre-suit notice of the breach of warranty, including by the February 20, 2025 notice letter.

180.    Plaintiff and members of the Class purchased the Products.

181.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products, or the premium price paid for the Products.

182.    Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**QUASI-CONTRACT**
***(for Plaintiff and the Class)***

183.    Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

**CLASS ACTION COMPLAINT**

184.   By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

185.   Defendant had knowledge of such benefits.

186.   Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

187.   Defendant's acceptance and retention of the benefits is inequitable and unjust because the benefits were obtained by Defendant's misleading Representations and unlawful conduct.

188.   Equity cannot in good conscience permit Defendant to be economically enriched for such actions at the expense of Plaintiff and members of the Class, and therefore restitution and/or disgorgement of such economic enrichment is required.

## **PRAYER**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Class; and naming Plaintiff's attorneys as Class Counsel to represent the Class;

B.    For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

C.    For an order awarding, as appropriate, compensatory and monetary damages to Plaintiff and the Class;

D.    For an order awarding injunctive relief;

E.    For an order awarding restitution/disgorgement, as appropriate;

F.    For an order awarding attorneys' fees and costs;

G.    For an order awarding pre-and post-judgment interest; and

H.    For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**CLASS ACTION COMPLAINT**

Dated:  July 18, 2025

Respectfully submitted,

KAMBERLAW, LLP

By: _s/ Naomi B. Spector_
        NAOMI B. SPECTOR

3451 Via Montebello, Ste.192-212
Carlsbad, CA 92009
Phone: 310.400.1053
Fax: 212.202.6364
Email: nspector@kamberlaw.com

**CLASS ACTION COMPLAINT**